FILED
United States Court of Appeals
Tenth Circuit

September 30, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re:

CHRISTOPHER F. COREY,

      Debtor.

No. 08-3309

MELNOR, INC.,

      Plaintiff - Appellee,

v.

CHRISTOPHER F. COREY,

      Defendant - Appellant.

**APPEAL FROM THE UNITED STATES BANKRUPTCY
APPELLATE PANEL OF THE TENTH CIRCUIT
(BAP No. KS-07-115)**

Submitted on the briefs:[*]

Jeffrey R. Siegel, The Siegel Law Firm, Kansas City, Missouri, for
Defendant-Appellant.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Colin N. Gotham, Evans & Mullinix, P.A., Shawnee, Kansas, for Plaintiff-Appellee.

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

This adversary proceeding in bankruptcy has its origin in a suit for fraud brought by Melnor, Inc. against Christopher R. Corey in the United States District Court for the Western District of Virginia. Litigation misconduct by Mr. Corey led the district court in that case to strike his defenses. When Mr. Corey failed to appear for the trial on damages, the court dismissed the jury and assessed damages based on evidence submitted by Melnor.

Mr. Corey then filed in the bankruptcy court for the District of Kansas a petition for relief under Chapter 7 of the Bankruptcy Code. Melnor brought this adversary action contending that Mr. Corey's debt to it was undischargeable because of his fraud. *See* 11 U.S.C. § 523(a)(2)(A). The bankruptcy court granted Melnor's motion for summary judgment, holding that under the doctrine of issue preclusion the Virginia judgment barred Mr. Corey from contesting that his debt was incurred through fraud. *See Melnor, Inc. v. Corey (In re Corey)*, Nos. 07-20462, 07-6118 2007 WL 4563432, (Bankr. D. Kan. Dec. 21, 2007)

(unpublished). The Tenth Circuit Bankruptcy Appellate Panel (BAP) affirmed. *See Melnor, Inc. v. Corey (In re Corey)*, 394 B.R. 519 (B.A.P. 10th Cir. 2008).

Mr. Corey appeals, contending that issue preclusion is not available to Melnor because the fraud claim was resolved through a default and therefore was not actually litigated. We disagree and affirm. Mr. Corey actually litigated Melnor's fraud claim. The default was not entered because of Mr. Corey's failure to contest the issue but rather because his efforts in contesting it were abusive.

## I.    DISCUSSION

On appeal from a BAP decision, we review matters of law de novo and review the bankruptcy court's factual findings for clear error. *See In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008). The pertinent facts are not in dispute and the only issue before us is one of law—namely, the propriety of the bankruptcy court's application of issue preclusion.

The doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit. Generally speaking, it is not unfair to deny a litigant a second bite at the apple, and preclusion conserves resources and provides consistency in judicial decisions. Because we are here concerned with the preclusive effect of a federal-court judgment, federal law applies. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000).

Under federal law, "issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27, at 250 (1982)) (brackets in *Arizona*). *Accord B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006). Mr. Corey challenges only whether his commission of fraud was "actually litigated" in Virginia.

Mr. Corey's challenge finds some support in the Supreme Court's opinion in *Arizona*. Holding that a consent judgment did not have issue-preclusive effect, the Court said: "'In the case of a judgment entered by confession, consent, or *default*, none of the issues is actually litigated. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action.'" *Arizona*, 530 U.S. at 414 (quoting Restatement (Second) of Judgments § 27 cmt. e) (emphasis added; brackets in *Arizona*).

The context of the language quoted from the Restatement, however, makes clear that the type of "default" being considered was not a default imposed as a sanction but a default resulting from an affirmative decision not to contest a matter. The opening paragraph of comment e to § 27 of the Restatement provides the rationale for not applying issue preclusion to a defaulting party:

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. *There are many reasons why a party may choose not to*

-4-

> *raise an issue, or to contest an assertion*, in a particular action. The
> action may involve so small an amount that litigation of the issue
> may cost more than the value of the lawsuit. Or the forum may be an
> inconvenient one in which to produce the necessary evidence or in
> which to litigate at all. *The interests of conserving judicial*
> *resources, of maintaining consistency, and of avoiding oppression or*
> *harassment of the adverse party are less compelling when the issue*
> *on which preclusion is sought has not actually been litigated before.*
> *And if preclusive effect were given to issues not litigated, the result*
> *might serve to discourage compromise, to decrease the likelihood*
> *that the issues in an action would be narrowed by stipulation, and*
> *thus to intensify litigation.*

(emphasis added). Clearly, this passage is referring to unraised or uncontested

issues. When, in contrast, the opposing party has already been subjected in an

earlier proceeding to "oppression or harassment" that caused the court to declare

a default on an issue, there is a compelling reason not to impose on that party

again with respect to the same issue. And basing preclusion on a default imposed

as a sanction can hardly "discourage compromise" or tend "to intensify

litigation."

    With this legal background in mind, we examine what happened in the

Virginia litigation. The event precipitating the default was apparently

Mr. Corey's failure to appear at a hearing on a date that he had proposed. The

magistrate judge's Report and Recommendation described the event as follows:

> Upon Christopher Corey's proposal of March 28, 2006 as a suitable
> date to conduct a hearing on outstanding pretrial motions, the
> undersigned scheduled a hearing on his outstanding motion to
> compel. On March 10, 2006, a notice of hearing was sent to Corey
> via the United States Postal Service and to counsel for plaintiff by
> electronic means. Without providing the court, or the opposition

counsel with notice that he would not be present at the hearing, Corey simply did not appear at the March 28, 2006 hearing.

Aplt. App. at 58. The magistrate judge proposed striking Mr. Corey's defenses as a sanction. The district court agreed that Mr. Corey's course of conduct throughout the litigation justified the sanction. It wrote:

> Melnor essentially claims that [Corey's business] and Corey accepted over $400,000 in merchandise in exchange for services they never intended to provide. However, the record reflects a pattern of behavior on the part of the defendants seemingly aimed at preventing the court from ever reaching the merits of that claim. . . . The record shows that Corey has obstructed the course of discovery by preventing the court from setting and completing essential hearings and by attempting to excuse his behavior by incredibly asserting that he has not received the court's notices. The court finds that striking Corey's defenses and moving forward to the issue of damage is the only way the court can advance this case toward its ultimate resolution. The court is satisfied that any lesser sanction would only enable further delays by Corey. Accordingly, the court ADOPTS [the magistrate judge's] Report and Recommendation in its entirety and hereby STRIKES Corey's defenses.

*Id.* at 99. The court set the issue of damages for jury trial. But when Mr. Corey failed to appear for trial, the court dismissed the jury, heard Melnor's evidence, and assessed damages, including an award of attorney fees under Virginia law, which authorizes such an award to a successful plaintiff in a suit for fraud.

In our view, the circumstances of the Virginia litigation justify precluding Mr. Corey from litigating in the bankruptcy court whether he committed fraud against Melnor. The purposes of issue preclusion are promoted by such preclusion: Melnor is not again subjected to the burdens of litigating the fraud

issue and the fraud issue is resolved consistently by the two courts.  Moreover, imposing preclusion on Mr. Corey is neither unfair to him nor likely to discourage constructive behavior (such as compromise in litigation); on the contrary, applying preclusion doctrine here is likely to discourage obstructive and delaying tactics.

In similar circumstances other circuits have reached the same conclusion. In *Federal Deposit Insurance Corp. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995), the Federal Deposit Insurance Corporation (FDIC) objected to the dischargeability of a debt arising from a default judgment obtained against Daily in a federal racketeering suit.  In the previous lawsuit the district court ordered the allegations of the complaint admitted and entered a default judgment on the grounds that "Daily's failure to provide discovery was the result of a deliberate, dilatory course of conduct . . . and . . . [his] strategy of delay and evasiveness had significantly prejudiced the [FDIC] and had significantly interfered with the judicial process." *Id.* at 367 (internal quotation marks, ellipses, and brackets omitted).  The Ninth Circuit agreed with the bankruptcy court that issue preclusion applied.  It wrote:

> The judgment entered . . . was not an ordinary default judgment.  Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claims and fail to appear.  He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him.  A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in

> subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

*Id*. at 368 (footnote omitted). The court concluded that application of issue preclusion did not deny Daily his day in court, which he squandered with obstructive behavior, and served the doctrine's "central purposes of 'protecting [the FDIC] from the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id*. at 369 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

Two other circuits have followed *In re Daily*. *See Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323–25 (11th Cir. 1995); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215–16 (3d Cir. 1997). We agree with the holdings in these cases. Mr. Corey attempts to distinguish them on the ground that the Virginia court did not enter a default judgment as a sanction against him, but merely precluded him from raising a defense. Why that matters, however, is a mystery to us. The essential point is that the only reason that the first court did not have to assess the merits of the issue before deciding it is that the losing party's misconduct forfeited its right to such an assessment. The policies

-8-

underlying issue preclusion are best served by precluding Mr. Corey from contesting in this adversary proceeding that he committed fraud.

We DENY Melnor's motion to take judicial notice of the pleadings in the Virginia lawsuit because such notice is unnecessary to our resolution of the case.

## II.  CONCLUSION

The BAP's judgment is AFFIRMED.