In re Wolfgang Friedrich ZWANZIGER, Debtor.

William M. Clark, Jr., Chapter 7 Trustee of the Bankruptcy Estate of James R. Hamilton, and Richard A. Kus, Plaintiffs–Appellees,

v.

Wolfgang Friedrich Zwanziger, Defendant–Appellant.

BAP No. WO–11–080. Bankruptcy No. 09–15036. Adversary No. 09–01195.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 3, 2012.

476

Submitted on the briefs: *

Bruce F. Klein, Bruce F. Klein, PLLC, Oklahoma City, Oklahoma, for Plaintiffs–Appellees.

Michael J. Rose, Michael J. Rose, P.C., Oklahoma City, Oklahoma, for Defendant–Appellant.

Before BROWN, KARLIN, and SOMERS, Bankruptcy Judges.

BROWN, Bankruptcy Judge.

The issue before this Court is whether an appellate decision and accompanying remand instruction issued in prepetition litigation between Plaintiffs–Appellees and Debtor–Appellant have preclusive effect in a later nondischargeability proceeding in the bankruptcy court. The appellate decision issued by the Tenth Circuit affirmed a federal district court judgment that found Debtor committed fraud, but reversed on the issue of fraud damages and remanded for a new trial on that issue. The Tenth Circuit held that the Plaintiffs had waived any claim for emotional distress damages, and gave specific instructions that the district court could not award emotional distress damages. Before a new trial on damages could occur, Debtor filed for bankruptcy. In the nondischargeability proceeding, the bankruptcy court concluded that the federal court judgment had collateral estoppel effect on all elements of Plaintiffs' 11 U.S.C. § 523(a)(2)(A)[1] claim, except for damages. Following a trial on damages, the bankruptcy court concluded that it was not bound by the Tenth Cir-

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Unless otherwise specified, all references to "Code," "Section," and "§ " are to Title 11, United States Code.

cuit's determination that Plaintiffs had waived emotional distress damages and included such damages in its award to Plaintiffs. For the following reasons, we REVERSE the decision of the bankruptcy court.

## I. Background

In 2004, Plaintiffs sued Debtor and several other entities in the Federal District Court for the Western District of Oklahoma (the "Federal District Court Litigation"), under that court's diversity jurisdiction.[2] Debtor is the former president of a company that employed both Plaintiffs. Plaintiffs alleged claims under the Oklahoma Protection of Labor Act ("Wage Act") and for fraudulent misrepresentation. At trial, the district court allowed Plaintiffs to present evidence of their emotional distress, over Debtor's objection. The jury issued a verdict against Debtor on both the Wage Act and fraud claims. The district court then entered a judgment (the "Judgment") against Debtor, awarding damages to Plaintiffs.

Debtor appealed the Judgment to the Tenth Circuit on several grounds, including that the district court erred in allowing Plaintiffs to introduce evidence of their emotional distress. The Tenth Circuit affirmed in part, reversed in part, and remanded the case to the district court.[3] In relevant part, the Tenth Circuit affirmed the finding that Debtor had committed fraud, but held that Plaintiffs had waived any claim for emotional distress damages because they failed to include that claim or

theory of damages in the final pretrial order. Accordingly, the Tenth Circuit reversed the awards of actual and punitive damages on the fraud claim and remanded the case to the district court for a new trial, with the following instruction:

> If the district court is unable to conclude, based on the record before it, that the injury element of the fraud claim was found by the jury based on evidence independent of emotional distress, a new trial must be held on the issue of injury; otherwise, the sole issue for retrial is the amount of damages, independent of emotional distress, resulting from the fraud.[4]

The Tenth Circuit affirmed the other compensatory damage awards under the Wage Act.

After remand, the district court scheduled a new trial on the damages issue, but before the trial could be held, Debtor filed bankruptcy on September 11, 2009. In the bankruptcy case, Plaintiffs filed an adversary proceeding alleging that the Judgment and a post-judgment award of attorneys' fees and costs were nondischargeable under § 523(a)(2)(A). Plaintiffs filed a motion for summary judgment on collateral estoppel grounds. The bankruptcy court granted that motion in part and denied it in part. The bankruptcy court determined that collateral estoppel applied so that "the judgment that resulted from the jury verdict on a finding of fraud in the Federal [District] Court Litigation necessarily results in a finding of fraud under

---

2. Plaintiffs in the prepetition litigation were James Hamilton and Richard Kus. Mr. Hamilton subsequently filed his own bankruptcy case. In the later adversary proceeding and this appeal, the Chapter 7 trustee of Mr. Hamilton's bankruptcy estate, William Clark, is the named Plaintiff rather than Mr. Hamilton. For ease of reference and because, as discussed below, Mr. Clark stands in privity with

Mr. Hamilton for purposes of the preclusion doctrines discussed herein, we refer to both Mr. Clark and Mr. Hamilton as one of the "Plaintiffs."

3. *Hamilton v. Water Whole Int'l Corp.*, 302 Fed.Appx. 789 (10th Cir.2008).

4. *Id.* at 798 (emphasis omitted).

§ 523(a)(2)(A) in this adversary proceeding."[5] However, the bankruptcy court noted that, although the Tenth Circuit affirmed the jury's finding of fraud, it vacated the award of damages and remanded for a new trial on the issue of damages only. As such, the bankruptcy court determined that collateral estoppel did *not* apply to the issue of damages attributable to Debtor's fraud and held a trial on that issue.

After the trial on damages, the bankruptcy court awarded Plaintiff Hamilton's representative $80,000 in unpaid wages and $25,000 for emotional distress. The bankruptcy court awarded Plaintiff Kus $51,300 in wages and $25,000 for emotional distress. With regard to the emotional distress damages, the bankruptcy court concluded as follows:

> [T]he Tenth Circuit reversed the fraud damage award because evidence of emotional distress was admitted, but the pretrial order in the case did not include emotional distress as an element of damage. And for that reason, the Tenth Circuit has already indicated and has— had remanded the case to the district court for a determination of damages excluding mental distress. Now, since the matter is in the bankruptcy court, it's the court's view that it would not be bound by that restriction that the Tenth Circuit imposed on the district court be-

cause this court is determining the extent of damages that would be nondischargeable resulting from fraud for the purposes of Section 523(a)(2).[6]

The Debtor appealed. The sole issue on appeal is whether the bankruptcy court erred in awarding damages for emotional distress.

## II. Standard of Review

■ The applicability of the doctrines of claim and issue preclusion is an issue of law reviewed *de novo*.[7]

## III. Discussion

### A. Preclusion Doctrines

This appeal focuses on the applicability of two common law preclusion doctrines, claim preclusion (or res judicata) and issue preclusion (or collateral estoppel).[8] The Debtor argues that the Tenth Circuit's ruling that Plaintiffs had abandoned their claims for emotional distress damages precluded the bankruptcy court from awarding those damages. Plaintiffs respond that the Judgment did not have preclusive effect under either res judicata or collateral estoppel on the issue of fraud damages, thus leaving the bankruptcy court free to decide the issue unfettered by the Tenth Circuit's ruling on waiver of emotional distress damages.

**5.** *Order Granting In Part and Denying In Part Motion for Summary Judgment* at 10, *in* Appellant Appx. at 67.

**6.** *Transcript of August 10, 2011 Hearing* at 8, *ll.* 10–23, *in* Appellant Appx. at 91.

**7.** *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir.2000) (res judicata); *Salguero v. City of Clovis*, 366 F.3d 1168, 1172 (10th Cir.2004) (collateral estoppel).

**8.** As noted by the Supreme Court, "[t]he preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). At times, the term "res judicata" is used to encompass both claim and issue preclusion. *Id.* In other instances, "res judicata" is used more narrowly as referring only to claim preclusion. *Id.* The parties to this appeal and the bankruptcy court utilized the terms "collateral estoppel" and "res judicata" in the more narrow sense. For purposes of clarity, we will use the terms "claim preclusion" and "issue preclusion."

■ Exactly how claim and issue preclusion apply in bankruptcy cases and particularly in nondischargeability proceedings can be murky.[9] The Supreme Court has defined the distinction between claim and issue preclusion as follows:

Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation on the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.[10]

Put another way, "[w]hereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit."[11]

■ Claim preclusion has a somewhat limited role in nondischargeability proceedings. The Supreme Court has held that claim preclusion is not applicable to claims and defenses which concern the dischargeability of a claim previously reduced to judgment in a state court.[12] The Supreme Court emphasized that dischargeability claims are unique and involve issues distinct from those considered in ordinary state court collection proceedings. In nondischargeability proceedings, as the Supreme Court emphasized, the dischargeability claim arises, not to dispute the validity of the underlying debt, but rather "to meet ... the new defense of bankruptcy which [the debtor] has interposed between [the creditor] and the sum determined to be due him."[13]

■ The exception outlined by the Supreme Court, however, does not eliminate application of claim preclusion in dischargeability proceedings in every instance. The Tenth Circuit has characterized a dischargeability action as involving two separate claims: "[o]ne cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions."[14] While claim preclusion does not apply to a claim for nondischargeability, it does apply to preclude a claim that challenges the extent and validity of the underlying debt, whenever another court has already made that determination.[15] Assuming all elements of claim preclusion are otherwise met, a prepetition judgment has preclusive effect

9. *See* Christopher Klein et al., *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr. L.J. 839, 840 (Fall, 2005) ("[T]he bankruptcy world is a ripe setting for misleading summary or serpentine reasoning about the common law doctrines of preclusion and estoppel.").

10. *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

11. *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

12. *Id.* at 138–39, 99 S.Ct. 2205.

13. *Id.* at 133, 99 S.Ct. 2205.

14. *In re McKendry*, 40 F.3d 331, 336–37 (10th Cir.1994) (quoting *Spinnenweber v. Moran (In re Moran)*, 152 B.R. 493, 495 (Bankr.S.D.Ohio 1993)).

15. *See Comer v. Comer (In re Comer)*, 723 F.2d 737, 740 (9th Cir.1984) (holding res judicata barred the bankruptcy court from looking behind a state court default judgment to determine the amount of the obligation); *Tague & Beem, P.C. v. Tague (In re Tague)*, 137 B.R. 495, 502 (Bankr.D.Colo.1991) ("Res judicata enables the bankruptcy court to give full faith and credit to a prior state court judgment in

on the amount of that debt in a later nondischargeability case.[16]

▮▮▮ Issue preclusion has a somewhat broader application in dischargeability proceedings than claim preclusion. In particular, "a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action."[17] In this way, issue preclusion will prevent a party from relitigating an issue that the party has litigated and lost in a prior action. As with claim preclusion, bankruptcy courts sometimes apply issue preclusion to preclude relitigation of the amount of damages.[18] Whether a court chooses claim or issue preclusion seems to depend on whether the amount of damages is characterized as a "claim" or an "issue." Regardless of which preclusion doctrine is chosen, it is applied in nondischargeability proceedings to bar the relitigation of the amount and extent of damages, if that issue was fully and finally litigated in a prior proceeding.[19]

▮▮▮ The application of claim or issue preclusion to the calculation of damages in this case is complicated by the procedural posture of the Federal District Court Litigation. As noted above, the district court entered the Judgment awarding fraud damages to Plaintiffs. The Tenth Circuit reversed the award of damages and remanded for a new trial on that issue. This reversal caused the Judgment to lose its conclusive effect on the damages issue. "A judgment that has been vacated, reversed, or set aside on appeal is ... deprived of all conclusive effect, both as res judicata and as collateral estoppel."[20] Only the portions of the Judgment that have not been reversed are entitled to preclusive effect.[21] Accordingly, the Judgment has no preclusive effect on the amount of damages owed to Plaintiffs and did not preclude the bankruptcy court from making a damage calculation.

This conclusion, however, does not end the inquiry because the determination of waiver of emotional distress damages is found not in the Judgment, but rather in the Tenth Circuit's decision reversing and remanding on the damages issue. As such, this Court must consider whether the Tenth Circuit's conclusion that Plaintiffs waived emotional distress damages has preclusive effect on the bankruptcy court.

**B. The Preclusive Effect of the Tenth Circuit Order and Judgment**

In this appeal, Debtor argues res judicata barred the bankruptcy court from

---

assessing whether a 'claim' or 'debt' exists in a bankruptcy case.").

16. *See In re Griego,* 64 F.3d 580, 584–85 (10th Cir.1995) (holding that res judicata precludes bankruptcy court from redetermining amount of damages awarded by state court default judgment); *Radermacher v. Sullivan (In re Sullivan),* 122 B.R. 720, 724 (Bankr.D.Minn. 1991) (holding that res judicata barred debtor from contesting the existence, validity, and amount of his debt in dischargeability proceeding).

17. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

18. *See In re Roussos,* 251 B.R. 86, 92–94 (9th Cir.BAP2000) (collateral estoppel applies to state court's calculation of fraud damages).

19. *See id.; In re Comer,* 723 F.2d at 740.

20. *United States v. Lacey,* 982 F.2d 410, 412 (10th Cir.1992) (quoting 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.416[2], at 517 (2d ed. 1992)).

21. *See Cowgill v. Raymark Indus., Inc.,* 832 F.2d 798, 802 (3d Cir.1987) ("When a court of appeals reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations of the

awarding emotional distress damages. Issue preclusion, however, is the more applicable doctrine. Debtor contends that a particular *issue* relating to Plaintiffs' damage claim—the waiver of emotional distress damages for fraud—has already been decided by the Tenth Circuit and cannot be re-litigated. This is a classic issue preclusion argument rather than claim preclusion, which would foreclose all *claims* that *might have been litigated* in the previous action.[22] Accordingly, we will apply issue preclusion rather than claim preclusion.

▮▮▮ Typically, the preclusive effect of a prior judgment of a federal court is determined by applying federal law.[23] However, when a federal court reviews the preclusive effect of a federal diversity judgment (such as in this case), the reviewing court should apply the law of the state in which the federal diversity court sat.[24] In this case, federal law and Oklahoma law on issue preclusion are essentially the same, making both persuasive.[25] The elements for issue preclusion are: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."[26] In addition, although not always explicitly stated as an element of issue preclusion, both federal and Oklahoma law require that the issue has been "actually litigated" in order for it to have preclusive effect.[27] There can be little dispute that the first and third elements have been met in this case. The issue is identical—whether Plaintiffs waived emotional distress damages. The parties in the Federal District Court Litigation are either the same or stand in privity with the parties to the nondischargeability proceeding.[28] We turn, then, to the second and fourth elements, as well as the "actually litigated" requirement.

### 1. Final Adjudication

▮▮▮ The second element of issue preclusion requires a "final adjudication on the merits." What constitutes a "final" adjudication for issue preclusion pur-

---

trial court normally continue to work an estoppel.").

**22.** *New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

**23.** *Yapp v. Excel Corp.,* 186 F.3d 1222, 1226 (10th Cir.1999).

**24.** *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.,* 296 F.3d 982, 986 (10th Cir. 2002).

**25.** *Kinslow v. Ratzlaff,* 158 F.3d 1104, 1106 n. 1 (10th Cir.1998).

**26.** *Dodge v. Cotter Corp.,* 203 F.3d 1190, 1198 (10th Cir.2000); *see also Salazar v. City of Okla. City,* 976 P.2d 1056, 1060–61 (Okla. 1999) (listing elements).

**27.** *Melnor, Inc. v. Corey (In re Corey),* 394 B.R. 519, 527 (10th Cir. BAP 2008), *aff'd,* 583 F.3d

1249 (10th Cir.2009); *State ex rel. Okla. Bar Ass'n v. Giger,* 93 P.3d 32, 38 (Okla.2004).

**28.** As discussed above, Mr. Hamilton was a party to the Federal District Court Litigation. Due to his subsequent bankruptcy filing, the Chapter 7 trustee of Mr. Hamilton's bankruptcy estate, Mr. Clark, was the named Plaintiff in the adversary proceeding. Because Mr. Clark, as trustee, is pursuing a personal action of Mr. Hamilton as property of Mr. Hamilton's bankruptcy estate, there is privity between Mr. Clark and Mr. Hamilton for issue preclusion purposes. *See Durkin v. Shea,* 957 F.Supp. 1360, 1372 (S.D.N.Y.1997) *see also Cmty. Bank of Homestead v. Torcise,* 162 F.3d 1084, 1087 n. 7 (11th Cir.1998) (bankruptcy estate was in privity with debtor for collateral estoppel purposes because estate was the successor to debtor's property). Mr. Clark does not appear to dispute that he is in privity with Mr. Hamilton for issue preclusion purposes in the adversary proceeding.

poses is not precisely defined by existing case law. Traditionally, finality for purposes of preclusion was equated with finality for purposes of appeal.[29] More recent decisions, however, have expanded the definition of finality beyond the traditional restrictions.[30] As explained by the Oklahoma Supreme Court, an order's finality for issue-preclusion purposes "does not equate with a judgment which ends the litigation and leaves nothing more for the court to do except execute the judgment," but instead "is assessed by determining whether the *conclusion in question is procedurally definite.*"[31] Factors relevant to this determination include "'the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.'"[32]

�In Applying this broader definition of finality, courts have given preclusive effect to holdings in appellate decisions, even though the appellate court has remanded

the case for further proceedings in the trial court. As explained by the Second Circuit:

> [C]ollateral estoppel does not require a judgment 'which ends the litigation ... and leaves nothing for the court to do but execute the judgment,' but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated. Finality in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.... The mere fact that the damages of the ... plaintiffs have not yet been assessed should not deprive that ruling of any effect as collateral estoppel it would otherwise have.[33]

The focus of these decisions is on whether the appellate decision is at all tentative in nature or rather meant to finally decide a particular issue.[34] Some courts also con-

29. *See* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 4432 (2d ed. 2002).

30. *See B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.,* 531 F.3d 1282, 1301 (10th Cir.2008) ("To invoke issue preclusion there need not be a prior adjudication on the merits (as is often the case with res judicata) but only a final determination of a material issue common to both cases.") (internal quotation marks omitted); *Cities Serv. Co. v. Gulf Oil Corp.,* 980 P.2d 116, 127 (Okla.1999); *Davidson v. Greenwich Ins. Co.,* No. 07–CV–451, 2009 WL 3233763, at *2–3 (D.N.D.Okla. Sept. 29, 1999); 18A Wright & Miller, *supra* n.29, § 4434 (citing cases).

31. *Cities Serv. Co.,* 980 P.2d at 127.

32. *Id.* (quoting *Lummus Co. v. Commonwealth Oil Ref. Co., Inc.,* 297 F.2d 80, 89 (2d Cir. 1962)).

33. *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir.1964) (internal quotation marks omitted).

34. *See Stone v. Williams,* 970 F.2d 1043, 1055–56 (2d Cir.1992) (state supreme court decision final for preclusion purposes on issue of paternity even though case was remanded to the state trial court for further proceedings); *Zdanok,* 327 F.2d at 955 (appellate decision has preclusive effect in later federal action on certain issues of liability even though appellate decision remanded case for further proceedings); *GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1212–13 (S.D.N.Y.1981) (portions of decision by Second Circuit has collateral estoppel effect in later case even though Second Circuit remanded for further proceedings.); *see also Syverson v. Int'l Bus. Machs. Corp.,* 472 F.3d 1072, 1079 (9th Cir.2007) (previous appellate decision sufficiently final for collateral estoppel purposes even though there were to be further trial court proceedings, but denying collateral estoppel due to lack of identity of issues).

sider whether the decision was final enough to be considered "law of the case" in the prior proceeding. If the decision was definite rather than tentative, or would be law of the case in the other proceeding, that holding is sufficiently "final" to have preclusive effect in a subsequent suit brought against the same party.[35]

We find the reasoning of these cases persuasive. The mere fact that the Tenth Circuit remanded the case to the district court does not mean the Tenth Circuit's decision was not final for issue preclusion purposes. The Plaintiffs were given an adequate opportunity to argue in favor of emotional distress damages in the Tenth Circuit appeal. The Tenth Circuit's decision was clear, and its reasoning left no room for reconsideration by the district court on whether Plaintiffs had waived emotional distress damages.[36] The Tenth Circuit's ruling was law of the case in the Federal District Court Litigation, thus indicating finality for preclusion purposes.[37] Accordingly, we hold the Tenth Circuit's ruling is sufficiently final for issue preclusion purposes in the dischargeability action.

### 2. Full and Fair Opportunity

The fourth element requires that the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. A "full and fair opportunity to litigate" is examined by questioning "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."[38] Here there is no contention that Plaintiffs lacked an incentive to litigate their waiver of emotional distress damages, and they did in fact vigorously pursue that issue throughout the jury trial and later appeal. Nor is there evidence of a procedural default in either the Federal District Court Litigation or appeal to the Tenth Circuit. Plaintiffs may have disagreed with the Tenth Circuit's conclusion that they waived their claim for emotional distress damages by not including that claim in the pretrial order, but mere disagreement with a legal ruling does not mean Plaintiffs were denied a full and fair opportunity to litigate.[39] As such, we conclude that the fourth element has been satisfied.

### 3. Actually Litigated

The final requirement of issue preclusion is that the issue was "actually litigated" in the prior proceeding. "Actual litigation" means the issue was "finally determined by a tribunal after all evidence and argument concerning the issue was

**35.** *Zdanok,* 327 F.2d at 955; *GAF Corp.,* 519 F.Supp. at 1212–13 ("The Second Circuit has held that the 'finality requirement of collateral estoppel is satisfied by determinations that were merely law of the case.' ") (citing *Zdanok,* 327 F.2d at 955).

**36.** *See Lummus Co. v. Commonwealth Oil Ref. Co., Inc.,* 297 F.2d 80, 89 (2d Cir.1962) (considering whether previous appellate decision's ruling on issue on which preclusion was sought was intended as tentative or final); *Syverson,* 472 F.3d at 1079 ("[T]he proper

query here is whether the court's decision on the issue as to which preclusion is sought is final.") (emphasis omitted).

**37.** *See GAF Corp.,* 519 F.Supp. at 1213.

**38.** *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1521 (10th Cir.1990); *see also Cities Serv. Co. v. Gulf Oil Corp.,* 980 P.2d 116, 125 (Okla. 1999) (listing factors).

**39.** *Sil–Flo, Inc.,* 917 F.2d at 1521.

fully presented by both parties." [40]   In this case, the issue of waiver of emotional distress damages was raised by the Debtor at trial, but the district court allowed Plaintiffs to present that evidence over Debtor's objection.   The Tenth Circuit, however, determined that Plaintiffs had waived their claim for emotional distress damages by failing to include it in the pretrial order. Due to Plaintiffs' waiver, the Tenth Circuit did not consider the actual merits of the emotional distress damage claim or Plaintiffs' evidence of those damages.   The question, then, is whether such a determination of waiver, which necessarily precludes consideration of the merits of the issue, amounts to "actual litigation."

Unfortunately, there is a dearth of case law to provide guidance on this precise issue.[41]   Many of the cases that discuss the "actually litigated" prong of issue preclusion involve a prior action in which a court dismissed a claim as a penalty or entered default judgment.   These cases generally fall into two categories.   In cases where the prior court dismissed the claim or en-

tered default as a sanction due to a party's obstructive behavior, courts are more likely to deem the issue "actually litigated" and entitled to preclusive effect.[42]   Default judgments entered for simply failing to prosecute, however, are less likely to be considered "actually litigated," if the defendant neither participated in the litigation nor engaged in any obstructive behavior.[43]

The reason behind the difference in treatment relates to the purposes of issue preclusion and the "actually litigated" requirement.   The Tenth Circuit has cited to the following commentary to the *Restatement of Judgments* as instructive:

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action.   *There are many reasons why a party may choose not to raise an issue, or to contest an assertion,* in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit.

---

**40.**   *Melnor, Inc. v. Corey (In re Corey),* 394 B.R. 519, 527 (10th Cir. BAP 2008), *aff'd,* 583 F.3d 1249 (10th Cir.2009); *State ex rel. Okla. Bar Ass'n v. Giger,* 93 P.3d 32, 38 (Okla.2004) ("An issue is actually litigated and necessarily determined if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.").

**41.**   There are a small number of cases that consider the preclusive effect of a criminal defendant's waiver of evidentiary challenges at a criminal trial in a later civil case challenging the constitutionality of the conviction. *E.g., Whitley v. Seibel,* 676 F.2d 245, 249–50 (7th Cir.1982); *Diamond v. Howd,* 288 F.3d 932, 935–36 (6th Cir.2002); *Pierce v. Gilchrist,* No. CIV–05–1519, 2007 WL 128994, at *6–7 (D.W.D.Okla. Jan. 16, 2007).   A majority of these cases hold that a waiver in the earlier criminal case does not preclude relitigation of the issue in the later civil proceeding.   We do not find these cases instructive because they typically involve an affirmative, strategic

choice by a criminal defendant to not challenge certain criminal evidence, or to waive a preliminary hearing on probable cause.   *See Diamond,* 288 F.3d at 934, 936.   This is not the type of waiver asserted in this case.

**42.**   *See Melnor, Inc. v. Corey (In re Corey),* 583 F.3d 1249, 1252–53 (10th Cir.2009) (default judgment entered as discovery sanction for obstructive behavior given preclusive effect); *Cmty. State Bank v. Strong,* 651 F.3d 1241, 1270–71 (11th Cir.2011), *petition for cert. filed* Feb. 21, 2012 (No. 11–1047) (state court decision striking certain defenses as sanction for repeated and flagrant discovery violations entitled to preclusive effect in later federal action).

**43.**   *E.g., Elletson v. Riggle (In re Riggle),* 389 B.R. 167, 176–77 (D.Colo.2007) (state court order effectively granting default judgment did not meet "actually litigated" requirement where there was not evidence of obstructive behavior by defendant).

Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. *The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.*[44]

This passage emphasizes there are valid policy reasons for *not* applying issue preclusion to a party who has made an affirmative, strategic decision to not "actually litigate" an issue. In that situation, these policies may outweigh the underlying interests served by issue preclusion. For instance, in the case of an ordinary default judgment entered for failure to prosecute, it is possible that the losing party merely chose not to participate because the amount at stake was not worth disputing at that time or because they lacked the funds to defend the action. In such a case, the interests quoted above—conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party—are less compelling, because there has been no "actual litigation" of any issues.

On the other hand, the entry of a default judgment as a penalty for obstructive behavior raises different interests. As noted by the Tenth Circuit, "[w]hen ... the op-posing party has already been subjected in an earlier proceeding to 'oppression or harassment' that caused the court to declare a default on an issue, there is a compelling reason not to impose on that party again with respect to the same issue."[45] Where obstructive behavior is present, application of issue preclusion to the defaulting party is likely to discourage obstructive and delaying tactics, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.[46] Moreover, application of issue preclusion in such situations does not in any way "discourage compromise" or "tend to intensify litigation."[47] In the case of a penalty default, it is often appropriate to deem the "actual litigation" requirement to be satisfied "because the [losing party] was afforded a reasonable opportunity to defend himself on the merits but chose not to do so."[48]

In this case, the Tenth Circuit's waiver determination does not fit neatly within either of these categories. It was not entered as a penalty imposed for Plaintiffs' obstructive behavior. Nor did the waiver result from Plaintiffs' strategic decision not to litigate an issue. Instead, Plaintiffs affirmatively sought to have evidence of emotional distress admitted over Debtor's objection. The district court allowed the evidence, but the Tenth Circuit disagreed and concluded that Plaintiffs had waived emotional distress damages by omitting them from the pretrial order. The waiver occurred because of a procedural error by Plaintiffs. Although it is a close call, the purposes of issue preclusion are better served by concluding that the issue of

---

44. *In re Corey*, 583 F.3d at 1251 (citing the *Restatement (Second) of Judgments* § 27 cmt. e) (emphasis added by the Tenth Circuit).

45. *Id.* at 1252.

46. *Id.* at 1252–53.

47. *Id.* at 1252.

48. *McCart v. Jordana (In re Jordana)*, 216 F.3d 1087, 2000 WL 783401, at *1 (10th Cir. June 20, 2000).

waiver was actually litigated. Limiting relitigation serves the important interest of maintaining consistency between the Tenth Circuit, district court and bankruptcy court. Application of issue preclusion to Plaintiffs is not likely to discourage the constructive behavior mentioned in the *Restatement* (such as compromise in litigation). While Plaintiffs did not engage in any obstructive behavior, we do not view it as unfair to impose issue preclusion on them. To hold otherwise would allow Plaintiffs to side-step the consequences of their procedural mistake and, as a consequence, use additional judicial resources to relitigate the emotional distress damage issue.

The dissent equates Plaintiffs' waiver to an admission or stipulation of fact, and cites to Wright and Miller for the proposition that issue preclusion is inappropriate "both because there has been no actual litigation or decision and because pleading maneuvers in one suit should not carry such consequences in other suits." [49] Plaintiffs, however, did not merely "maneuver" to narrow the issues at trial, as is typically the case with an admission or stipulation. Instead, the Tenth Circuit made an "actual decision" on the issue of waiver. The commentary to the *Restatement (Second) of Judgments* § 27 describes "actual litigation" as follows:

> When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judg-

ment (see Illustration 10), a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.[50]

Here, the parties raised the issue of waiver in the Federal District Court Litigation, the district court made a determination, the Debtor appealed, and then the Tenth Circuit finally determined that waiver had occurred. Rather than a mere pleading maneuver, the Tenth Circuit's decision is a final determination "based on a failure of pleading" by Plaintiffs, as described by the *Restatement.* Accordingly, we conclude that the issue of waiver of emotional distress damages was "actually litigated."

All the elements of issue preclusion are present and the Tenth Circuit opinion is entitled to preclusive effect. As such, the bankruptcy court should have precluded Plaintiffs from presenting evidence on their emotional distress damages, and the bankruptcy court erred in awarding emotional distress damages to the Plaintiffs.

## IV. Conclusion

For the reasons stated herein, the bankruptcy court's Order awarding Plaintiffs' damages for emotional distress is REVERSED and this case is REMANDED for entry of judgment without inclusion of emotional distress damages.

SOMERS, Bankruptcy Judge, dissenting.

I respectfully dissent. I agree with the majority that "[r]egardless of which preclusion doctrine is chosen, it is applied in nondischargeability proceedings to bar the

---

**49.** *Dissenting Opinion* at 490–91 (citing 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 4443 at 251–52 (2d ed.2002)).

**50.** *Restatement (Second) of Judgments* § 27 cmt. d (1982).

relitigation of the amount and extent of damages, if that issue was fully and finally litigated in a prior proceeding." [1] I, however, dissent from the majority's conclusion that this standard is satisfied.[2] I agree with the majority that Plaintiffs' waiver of emotional distress damages in the District Court Litigation pretrial order was fully and finally litigated. I disagree that this procedural waiver results in a bar to recovery of such damages in the bankruptcy nondischargeability litigation.

In the district court, the issue of emotional distress damages was raised by the parties, and the district court allowed Plaintiffs to present that evidence at trial over the Debtor's objection. The jury awarded Plaintiffs actual and punitive damages. On appeal to the Tenth Circuit, Debtor contended that the district court committed error by allowing Plaintiffs' testimony about the mental distress they suffered as a result of Debtor's misrepresentation. The Tenth Circuit concluded that "[b]ecause there is no mention of damages for mental suffering in the pretrial order, the district court abused its discretion by allowing evidence of such damages." [3] It ordered a new trial on the sole issue of the amount of damages, independent of emotional distress, resulting from the fraud, unless the district court on the record before it was able to conclude that the injury element of the fraud claim was found by the jury based on evidence independent of emotional distress.[4] The dis-

trict court determined that a new trial would be required, but before that occurred, Debtor filed for relief under Title 11. In the dischargeability proceeding, the bankruptcy judge admitted evidence of emotional distress, and awarded each Plaintiff $25,000.

Although agreeing that the waiver of the claim for emotional distress damages in the pretrial order was fully and finally litigated, I depart from the majority's conclusion that this waiver controls the bankruptcy case. I disagree with the holding that the "bankruptcy court should have precluded Plaintiffs from presenting evidence of their emotional distress damages, and the bankruptcy court erred in awarding emotional distress damages to the Plaintiffs." [5]

My disagreement is threefold. First, I do not agree that the doctrine of issue preclusion applies to the waiver of emotional distress damages in the District Court Litigation pretrial order. The *Restatement (Second) of Judgments* § 27 defines issue preclusion as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." By definition, the doctrine applies when the same issue of law or fact is involved in two separate actions. The is-

---

1. *Majority Opinion* at 482.

2. I also question the reference to the "accompanying remand instruction" in the first sentence of the majority opinion. This implies that there is a separate remand instruction document, but there is no such document in the record. The last sentence of the Tenth Circuit opinion, which I would characterize as the remand instruction, states, "We reverse the awards of actual and punitive damages

based on the fraud claims ... and remand to the district court for proceedings consistent with this opinion." *Hamilton v. Water Whole Int'l Corp.*, 302 Fed.Appx. 789, 800 (10th Cir. 2008) (emphasis omitted).

3. *Id.* at 797.

4. *Id.* at 798.

5. *Majority Opinion* at 488.

sue of law determined by the Tenth Circuit was the construction of the pretrial order; that issue of law is not involved in the bankruptcy dischargeability litigation. By definition under Civil Rule 16(b), a pretrial order "controls the course of the action," unless modified by the court. The "action" controlled is the case in which the pretrial order is filed; the "action" does not include a subsequent proceeding filed in another court.[6] Since the pretrial order filed in the District Court Litigation does not control the bankruptcy litigation, the Tenth Circuit's determination of the construction of that order is not relevant in the subsequent action. Therefore, for purposes of issue preclusion, the issue of law determined by the Tenth Circuit is not a legal matter at issue in the subsequent bankruptcy case. The doctrine of issue preclusion does not apply under these circumstances.

The effect of the majority's application of issue preclusion to a waiver in a pretrial order is to preclude the award of emotional distress damages as if that issue had been fully and finally litigated. But the majority acknowledges that "[d]ue to Plaintiffs' waiver, the Tenth Circuit did not consider the actual merits of the emotional distress damage claim or Plaintiffs' evidence of those damages."[7] The substantive right to recover emotional distress damages was not actually litigated; there is no judgment allowing or disallowing emotional distress damages. Rather, the Tenth Circuit held that Plaintiffs following remand were barred from litigating their right to such damages because of a procedural error. It reversed the jury's damage award for

fraud damages, and Debtor filed for bankruptcy relief before retrial of the damage amount. The matters that were fully litigated were the admission of evidence of emotional distress and the preclusive effect of the pretrial order, not the right to recover emotional distress damages which the majority deems precluded.

Second, even assuming issue preclusion is the correct doctrine to apply in this appeal, the majority's analysis is at odds with the observation that generally, issue preclusion does not arise from pleading maneuvers in prior litigation.[8] Comment e to section 27 of the *Restatement (Second) of Judgments,* on which the majority relies, includes an enumeration of situations where an issue is deemed to have been not actually litigated:

> An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; nor is it actually litigated if it is the subject of a stipulation between the parties. A stipulation may, however, be binding in a subsequent action between the parties if the parties have manifested an intention to that effect. Furthermore under the rules of evidence applicable in the jurisdiction, an admission by a party may be treated as conclusive or be admissible in evidence against that party in a subsequent action.[9]

Wright and Miller state:

---

6. Of course, a court could order that a pretrial order in prior litigation controls subsequent litigation, but that is not the circumstance here.

7. *Majority Opinion* at 485–86.

8. *Restatement (Second) of Judgments* § 27, cmt. e (1982).

In older practice, admissions of the facts set out in an opposing pleading by demurrer or failure to deny could give rise to issue preclusion. Today it seems to be agreed on all sides that issue preclusion does not apply. Views of pleading have changed, and it is now recognized that issue preclusion is inappropriate both because there has been no actual litigation or decision and because pleading maneuvers in one suit should not carry such consequences in other suits. So too, the effect of admissions in response to formal requests for admission under Civil Rule 36 is expressly limited to the first suit, and a finding based on the admission that results from failure to respond to a request for admissions likewise does not support issue preclusion.[10]

Similarly, a waiver arising from an omission in a pretrial order should not give rise to issue preclusion.[11] As stated above, under Civil Rule 16(b), a pretrial order "controls the course of the action," unless modified by the court. The pretrial order entered in the District Court Litigation does not control the subsequent discharge litigation in the bankruptcy court. Further, if the omission from the pretrial order were viewed as similar to a stipulation or admission, it would not have issue preclusion effect. "A stipulation or admission may be binding in later stages of a continuing proceeding. But issue preclusion ordinarily does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation."[12]

Third, I question the majority's policy comments. Allowing litigation of Plaintiffs' emotional distress damages in bankruptcy court creates no inconsistency with the Tenth Circuit or the district court. The district court pretrial order and the resulting preclusion of the admission of evidence are not binding in the bankruptcy court. If a judgment had been entered after remand, the doctrine of claim preclusion would be applicable to maintain consistency as to the amount of recovery, but no such judgment has been entered. I find it unfair to apply issue preclusion to the Plaintiffs under the circumstances of this case. Plaintiffs suffered the consequences of their procedural error when the

9. *Id.* The majority's criticism of my position based upon the statement in comment d to the *Restatement (Second) of Judgments* § 27 that "[a] determination [of issue preclusion] may be based on a failure of pleading" misconstrues the comment. *Majority Opinion* at 488. As stated in the Reporter's notes to the comment, the "failure of pleading" referred to are motions for summary judgment and motions to dismiss, which generally result in the determination of substantive matters.

10. 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 4443 at 251–52 (2d ed. 2002) (footnotes omitted).

11. *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 4419 at 504 (2d ed. 2002) ("Finally, it is ruled occasionally that prior litigation forecloses any examination of an issue that was never raised, even though there is no claim preclusion. The explanation that is most likely to be given is that the issue has been waived. The results of this approach are often questionable.").

12. 18A Wright & Miller, *supra* n.10, § 4443 at 252–53 (footnote omitted). *See also* 18 Wright et al., *supra* n.11, § 4419 at 504 ("The actual litigation question also may prove troubling when an issue is resolved as a sanction, not on the basis of trial and findings. Because there is no actual litigation or decision of the issue, it is better to deny issue preclusion. If the issue is to be foreclosed in a separate proceeding, foreclosure should rest on a determination that the sanction was intended to reach that far and that there was authority to reach that far.").

Tenth Circuit reversed the judgment. Plaintiffs are not engaged in obstructive behavior or in forum shopping to evade the consequences of their mistake; it was the Debtor who filed the bankruptcy case before final judgment in the district court, thereby placing the question of the amount of the damages before a second forum.

For the foregoing reasons, I would affirm the bankruptcy court's award of damages for emotional distress.